MONTAGUE M. HENDRICKS and Others, Executors of HENRY HENDRICKS, Deceased, Respondents, *v.* PHILIP STARK, Appellant.

### *Contract—Specific Performance—Party-walls—Easement.*

The fact that two of the walls of a building are party-walls, each proprietor having an easement in one half of the wall which stands on the adjoining premises, does not constitute such an encumbrance to the title as to excuse a purchaser of the building and premises from completing his purchase, because of the existence of such easement.

Appeal from the Supreme Court.

The action was to enforce specific performance, by the Defendant, of a contract to purchase the premises known as the Collins Hotel, in the city of New York, for the sum of $96,000. The Appellant denied his obligation to complete the purchase, on the ground that two of the walls of the building were party-walls.

The cause was tried at Special Term, before Mr. Justice Barnard, who rendered judgment for the Plaintiffs. He found, in substance, the following facts:

1. On the 13th of June, 1839, Lispenard Stewart and Robert Stewart owned a lot on the corner of West and Hoboken streets, being eighty feet on West street, and eighty-eight feet on Hoboken street; and also owned the adjacent lots on the east and south.

2. They entered into a contract with John G. Rohr, by which he undertook to erect three or more four-story brick stores, to occupy the entire front of the corner lot on both streets; the southerly and easterly walls to be party-walls, half on the corner lot, and half on the premises adjacent; in consideration of which the Stewarts were to convey to him a part of the property.

3. Rohr sold the southerly forty feet of the lot on West street to George T. Nelson, who verbally agreed to erect the building on that part of the premises called for by the contract with the Stewarts, Rohr agreeing to build, between his lot and Nelson's,

a party-wall, standing half on the land of each—Nelson paying half the expense.

4. Rohr proceeded to erect the stores on the portion of the premises he retained, the easterly and southerly walls being party-walls, standing half on his own, and half on the adjacent lots.

5. On the 9th day of October, 1840, the Stewarts executed the conveyance to Rohr of the premises in question, being eighty feet on Hoboken street, forty-four feet on West street, and of corresponding dimensions in the rear; and the deed provided that the owner of the lot adjoining the easterly house on Hoboken street should be entitled to use and build upon one moiety of the party-wall, or so much of it as he might require, on paying to Rohr the appraised value of such portion of it as he should use; after which it should be and remain a party-wall between such houses, belonging equally and in common to both.

6. In 1851 Rohr converted the buildings into a hotel, by adding another story, and changing the internal arrangements; and the property is now known as the Collins Hotel.

7. In 1854 the premises were conveyed by Rohr and wife to the testator Hendricks; and they were described in the deed as eighty feet on Hoboken street, and forty-four feet on West street; but no mention was made of any agreement in regard to party-walls.

8. The testator died in September, 1861, leaving a will, in which he appointed the Plaintiffs his executors and trustees, with authority to sell all his real estate at public auction, or otherwise, and to execute conveyances therefor; and the will was duly proved, and letters testamentary issued to the Plaintiffs.

9. The premises were accordingly advertised for sale in February, 1866; the following being the description in the auctioneer's notice: "West street, south-east corner of Hoboken street, Collins Hotel, opposite Albany steamboat landing, 44 x 80 feet."

The conditions of sale provided for payment of half the purchase-money of a conveyance, and a bond and mortgage for the balance of the price, to be delivered at the office of Messrs. Cambreling & Pyne, on the 25th of April following. The following clause was also inserted in the conditions of sale: "The dimen-

sions of all the property is more or less. The usual executors' deed will be given."

10. The Defendant purchased at the auction sale for $96,000 ; and he signed the following memorandum at the foot of the conditions of sale :

" I have this thirteenth day of February, 1866, purchased the premises on the south-east corner of West and Hoboken streets, for the sum of ninety-six thousand dollars, and hereby promise and agree to comply with the terms and conditions of the sale of said premises as above mentioned and set forth, said premises being known as Collins Hotel.

" PHILIP STARK."

The Defendant, on that and on the following day, paid ten per cent. upon the purchase.

11. The premises known as " Collins Hotel " are the same formerly owned by Rohr. The walls on the east and south are party-walls, and have been used as such for twenty-seven years. They were intended to be built so that the centre of each wall should be on the boundary line ; but the centre line of the southerly wall is in fact an inch south of a line parallel with Hoboken street and forty-four feet southerly therefrom.

At the time of the purchase, subscription, and payment of the ten per cent., the Defendant had no knowledge that the walls were party-walls.

12. The Defendant subsequently elected and agreed, pursuant to the conditions of sale, to give a bond and mortgage for half the purchase-money. The Plaintiffs, at his request, prepared them, and affixed the stamps, of the value of $58, and he executed them, but did not deliver them to the Plaintiffs.

13. The sum of $19,200, being twenty per cent. on the purchase, which became due on the 21st of March, 1866, has never been paid.

14. The Plaintiffs, prior to the 25th of April, 1866, prepared a conveyance of the premises, affixed the necessary stamps, of the value of $96, and submitted it to the Defendant for inspection ; and the deed was approved by him as to form.

15. On the 25th of April they tendered the deed to the Defendant, in conformity with the terms of sale, but he refused to receive it, and has neither paid the balance of the price, nor delivered the bond and mortgage.

16. The damages, by way of expenditures, sustained by the Plaintiffs, by reason of the Defendant's refusal to perform, have been settled by the parties at $1,199.60.

The conclusions of the Judge were:

*First.* That the party-walls did not constitute such an easement or encumbrance on the premises, or defect in the title thereof, as should relieve the Defendant from his contract, or entitle him to compensation.

*Second.* That the dimensions of the premises having been expressly stated in the terms of sale as more or less, the existence of the party-walls does not constitute such a variance in the dimensions of the premises agreed to be sold as to relieve him from the purchase, or entitle him to compensation.

The appropriate judgment having been rendered, and affirmed at the General Term, the Defendant appealed to this Court.

*Wheeler H. Peckham* for Appellant.

*William M. Evarts* for Respondents.

PORTER, J.—Upon the facts found by the Judge, the Plaintiffs are clearly entitled to the relief demanded in the complaint, and awarded in the Court below. As trustees under the testator's will, they were the proprietors of the premises known as the "Collins Hotel." These premises extended, in fact, as well as in law, to the central lines of the respective party-walls; which substantially corresponded with the specified dimensions of the lot, and with its eastern and southern boundaries (Eno *v.* Del Vecchio, 4 Duer, 61; Sherred *v.* Cisco, 4 Sandf. 480; Thompson *v.* Somerville, 16 Barbour, 473; Partridge *v.* Gilbert, 15 New York, 614). There was no assertion of title beyond these lines, either in the notice of sale or in the contract signed by the Defendant. The practice of economizing space in populous cities, by the erection of buildings with party-walls, is one so ancient that it would be difficult

to trace its origin. The law applicable to this subject has been for centuries well settled in England; and the prevalence of a like usage in our larger towns has made the rules which govern it equally familiar here.

There was nothing in the description of the premises in question as the " Collins Hotel " which imported, ex vi termini, that the walls were of this or of a different character. The failure of the Defendant to inform himself, on a subject as to which the notice of sale was silent, indicates his indifference as to the particular character of the walls, and shows that he was content to buy without being at the trouble of examination or inquiry. This omission may be evidence of his own indiscretion and incaution; but it cannot be imputed as a wrong to the Plaintiffs, who neither said nor did anything to mislead him. The auctioneer was not authorized to dispose of the whole or any portion of the structures on the adjacent premises; and the Defendant cannot justly complain that the Plaintiffs were not the owners of that which they did not assume to sell, and which was not included in his purchase.

As the title acquired by the Defendant extended only to the middle of the eastern and southern walls, it is obvious that the mutual easement for their support was a benefit and not a burden, to him as well as to the adjacent proprietors. It was a valuable appurtenant, which passed with the title of the property, and its value to him was not diminished by the fact that it was equally beneficial to the adjacent owners (Eno *v.* Del Vecchio, 4 Duer, 53). It is manifest that the Collins Hotel would be materially diminished in value, if these walls were to be so pared down as to deprive them of their present support. Their thickness does not appear; but it is fair to assume that the builder availed himself of the advantage of this mode of construction, by adding as much to the interior area of the structure as was consistent with its entire security. It is true that the erection of a party-wall creates a community of interest between neighboring proprietors; but there is no just sense in which the reciprocal easement for its preservation can be deemed a legal encumbrance upon the prop-

erty. The benefit thus secured to each is not converted into a burden, by the mere fact that it is mutual and not exclusive (Partridge v. Gilbert, 15 New York, 601).

Even if this were otherwise, there would still be nothing in the present case to justify the Court in refusing a decree in favor of the Plaintiffs. There was no failure of any substantial inducement to the contract. The Defendant acquired what he proposed to buy; and he was so well satisfied with the purchase that, after full opportunity of examination, he approved the form of the proposed conveyance, and executed a bond and mortgage for the balance of the price. Even when he concluded not to fulfil his contract, he did not suggest the objection on which he now rests his defence. The Plaintiffs tendered substantial performance of their agreement; and, if the Defendant really deemed it desirable to fill up part of the interior of the building with an additional thickness of wall, standing wholly on his own ground, an appropriate allowance could have been made by way of compensation. But he made no such claim; and there is no finding, as matter of fact, that the value of the premises is in any degree diminished by the reciprocal easement of which he complains. In such a case, a denial of specific performance would be in contravention of the plainest rules of equity (Winne v. Reynolds, 6 Paige, 407; King v. Bardeau, 6 Johnson's Ch. R. 37; Ten Broeck v. Livingston, 1 id. 357).

The judgment should be affirmed.

GROVER, J.—But one question is made by the counsel for the Appellant. That is, that the title of the vendors to the property which the Appellant agreed to purchase was defective. The property was situated in the city of New York, and consisted of a lot upon the corner of Hoboken and West streets, forty-four feet by eighty, upon which there was a building, used for and known as the Collins Hotel.

The purchase was made at an auction sale. A clear title to the lot and building of the dimensions described was shown by the vendors, except that it appeared that two of the outer walls of

the building were party-walls of this and buildings upon the adjoining premises; and that the party-walls were erected the one half in width upon the lot in question, and the other half upon the adjoining lots. This is the defect of title complained of. The rights of the proprietors of such walls have been settled by adjudication. Each owns in severalty his entire lot, with that portion of the wall located thereon, subject to the easement of the other owner to use the wall, for the support of his building (Partridge v. Gilbert, 15 N. Y. 601).

It follows that neither proprietor can remove the wall without the assent of the other, while it is in a suitable condition to support the buildings, and is required for that purpose.

It further follows, that the vendors could not convey an absolute, unqualified title to the half of the walls in question, which were situate upon the lot, for the reason that the adjoining proprietors had an easement therein for the support of their respective buildings.

To this extent the title was not absolute. But the vendors had a similar easement in the remaining half of the walls, situate upon the lands of the adjacent proprietors, for the support of their buildings, and this right would have passed to the Defendant by the conveyance offered. The Defendant's counsel insists that he ought not to be compelled to perform his contract, unless he will acquire thereby a complete title to the entire property he agreed to purchase.

As an original question, this might be the better rule, but the doctrine in equity has ever been held different.

That doctrine is, that if the vendor can give the purchaser the property contracted for, substantially, the purchaser will be compelled to take the title, although there may be an encumbrance upon the title, if such encumbrance can be compensated for consistently with the conclusion that the purchaser would have entered into the contract had he known of the encumbrance (2 Leading Cases in Equity, part 2, 20). Applying this doctrine to the present case, we find that the purchaser would obtain title to the property contracted for, subject to the easement of the adja-

çent proprietors in two of the outer walls for the support of their buildings. That this easement is compensated for to the purchaser, by the acquisition of a similar easement in the walls of these proprietors, for the support of his building.

There was no suggestion upon the trial that this right was not 'a full compensation for the encumbrance.

It can scarcely admit of a doubt but that the Defendant would have made the purchase had he known that the two walls were party-walls, which in truth appear to be mutually beneficial to the proprietors. Under this state of facts, Defendant must complete his purchase.

The judgment appealed from must be affirmed.

All the Judges concurring,

Judgment affirmed.

JOEL TIFFANY,<br>
State Reporter.
